IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TINA MARIE STARK, | CASE NO. 1:20-CV-02009-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

### INTRODUCTION

Plaintiff Tina Marie Stark filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision  denying disability insurance benefits ("DIB"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On September 8, 2020, pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 26, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Stark filed for DIB on June 5, 2018, alleging a disability onset date of August 1, 2010. (Tr. 113). Her claims were denied initially and on reconsideration. (Tr. 112-34). She then

requested a hearing before an administrative law judge. (Tr. 146-47). Ms. Stark (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on August 23, 2019. (Tr. 53-94).

In a written decision dated September 9, 2019, the ALJ found Ms. Stark not disabled. (Tr. 18-36). The Appeals Council denied Ms. Stark's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955 & 404.981). Ms. Stark timely filed this action on September 8, 2020. (ECF #1).

Factual Background

## I.     Administrative Hearing

On August 23, 2019, Ms. Stark (represented by counsel) and the VE testified at an administrative hearing before an ALJ. (Tr. 53-94).

Ms. Stark testified she lives alone and maintains her driver's license. (Tr. 58-59). She can drive, although she sometimes relies on friends or rideshare services if she feels unable to drive herself. (Tr. 59).

Ms. Stark has a master's degree in mental health counseling. (Tr. 60). She has also taken classes in preparation for a certificate in energy psychology, but has been unable to complete the required tests. (Tr. 62). Ms. Stark has worked occasionally as a rideshare driver, but never earned more than $1000 a month. (Tr. 62-63). Ms. Stark testified her last full-time position was in 2006 at AMN Services as a surgical technician on contract. (Tr. 63-67).

Ms. Stark is diagnosed with dissociative identity disorder stemming from early childhood trauma. (Tr. 82). Ms. Stark testified she is unable to work because she will be triggered and unable to function well during the day. (Tr. 67). These symptoms also cause her pain, tiredness, not

2

sleeping well, and difficulty focusing. (Tr. 68). Medications have helped control her mental heath symptoms, but her physical pain remains. (Tr. 68-69). Ms. Stark has had suicidal thoughts, but no attempts. (Tr. 77). She has not required inpatient hospitalizations for her mental health issues. (Tr. 79). Ms. Stark has treated with a psychiatrist and a functional medicine doctor in attempts to control her physical and mental health symptoms. (*Id.*). Ms. Stark uses a CPAP machine at night to relieve her sleep apnea. (Tr. 72). Ms. Stark has experienced blurred vision and frequent headaches after getting new lenses. (*Id.*).

Ms. Stark testified she can carry up to 15 pounds easily. (Tr. 74). She can get groceries and tend for her potted plants, although she has someone else mow her half-acre yard. (Tr. 74-75). Ms. Stark practices yoga and takes daily walks for 45 minutes or longer. (Tr. 75). In 2014, she moved from San Diego to Ohio to care for her father before he passed away. (Tr. 83). Friends from San Diego have visited Ms. Stark in Ohio and stayed for extended periods of time to help her clean out her father's things. (Tr. 84).

The VE then testified. The VE confirmed that Ms. Stark's only past relevant work was as a surgical technician. (Tr. 87). The VE classified the surgical technician position as DOT[1] 079.374-022, SVP[2] 6, skilled, generally performed at light exertion, but actually performed at medium. (*Id.*).

The ALJ then presented a hypothetical to the VE: assume an individual of the same age, education, and experience as the claimant, at medium exertion, and limited to simple, repetitive

---

[1]      "DOT" refers to the *Dictionary of Occupational Titles*, published by the Department of Labor. 20 C.F.R. § 404.1566(d).

[2]      "SVP" stands for "Specific Vocational Preparation" and refers to the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010).

tasks, goal-oriented but no fast paced or production quota rate work; the individual can have occasional interaction with the public. (*Id.*). The VE testified that the hypothetical individual could not perform Ms. Borger's past work. (*Id.*). Because the hypothetical individual was for unskilled work, transferability of skills from the past work was precluded. (Tr. 87-88). However, the VE identified examples of other work in the national economy the hypothetical individual could perform:

- Linen room attendant (DOT 222.387-030): SVP 2, unskilled, medium, 54,000 jobs nationally;

- Checker, laundry (DOT 369.687-014): SVP 2, unskilled, medium, 27,000 jobs nationally; and

- Tumbler, laundry (DOT 369.687-034): SVP 2, unskilled, medium, 9,000 jobs nationally.

(Tr. 88). The VE confirmed his testimony was consistent with the DOT, except when relying on his extensive experience knowing which positions would not require interaction with the general public. (Tr. 89).

The ALJ posed a second hypothetical to the VE limiting the individual to medium exertion, but with additional limitations to simple tasks and simple work-related decisions in a routine work setting with changes that are easily explained, goal oriented but no fast paced or productive quota rate work; superficial interactions with supervisors, co-workers, and the public, with no negotiating with, instructing, persuading, or directing the work of others. (*Id.*). The VE confirmed that past work would be eliminated but the hypothetical individual could still perform the three jobs previously identified. (*Id.*).

4

The ALJ then posed a third hypothetical to the VE, keeping the same limitations as in the second hypothetical, except limiting to the light exertional level. (Tr. 89-90). The VE identified the following jobs in response to this hypothetical:

- Garment sorter (DOT 222.687-014): SVP 2, unskilled, light exertion, 115,000 jobs nationally;

- Marker, retail trade (DOT 209.587-034): SVP 2, unskilled, light, 54,000 jobs nationally; and

- Checker I (DOT 222.687-010): SVP 2, unskilled, light exertion, 33,000 jobs nationally.

(Tr. 90).

Finally, the ALJ asked if an individual who is off task 20 percent of the workday, exclusive of regular breaks, and/or more than two days absent monthly, including tardy arrivals and early departures, could perform competitive work. (Tr. 91). The VE testified that either individually or collectively, such limitations would preclude competitive employment, as employers tolerate no more than 10 percent off-task behavior and no more than one day per month absent. (*Id.*). The VE added that the DOT does not address absenteeism, but that he based his testimony on over 20 years' experience in the vocational field. (*Id.*).

Ms. Stark's attorney concluded with a closing statement to the ALJ, asking to find Ms. Stark disabled per the grid rules due to her advanced age. (Tr. 93). Ms. Stark's counsel also indicated that certain mental health records from Dr. Farrell had been marked irrelevant; the ALJ asked to forward the records and he would consider their contents. (*Id.*).

## II.  PERSONAL AND VOCATIONAL EVIDENCE

Ms. Stark was born on February 28, 1960 and was 50 years old on the alleged onset date of her disability; she was therefore defined as an individual closely approaching advanced age; by the

time of the administrative hearing, Ms. Stark had reached 55 years old and changed age category to advanced age. (Tr. 34; *see also* 20 C.F.R. § 404.1563). Ms. Stark had past relevant work as a surgical technician. (Tr. 33; *see also* 20 C.F.R. § 404.1565). Given her residual functional capacity, her past relevant work could no longer be performed. (*Id.*). Accordingly, Ms. Stark was unable to perform past relevant work. (*Id.*).

## III.    RELEVANT MEDICAL EVIDENCE

The adjudicating period in Ms. Stark's case is from August 13, 2013 through December 31, 2015, the date last insured. (*See* Tr. 21-22). I summarize below the medical evidence from this period.

**Janet A. Farrell, Ph.D.** While living in San Diego Ms. Stark treated for major depression with Janet A. Farrell, Ph.D.. (Tr. 46-49). On June 26, 2015, Dr. Farrell completed a psychological report describing the nature and symptoms of Ms. Stark's condition. (*Id.*). In that report, Dr. Farrell recounted that Ms. Stark had reported first seeking treatment in 1987; Dr. Farrell first treated Ms. Stark in November 2004. (Tr. 46). Ms. Stark first presented with symptoms of moderate depression, including depressed mood, lack of interests or pleasure, weight gain, overeating, hypersomnia, fatigue, irritability, anxiety, loss of energy, decreased concentration, guilt and feelings of worthlessness. (*Id.*). In addition, Ms. Stark experienced somatic complaints, including headaches, abdominal pain, hip and leg pain, and blurred vision, with no physiological causes. (*Id.*).

Ms. Stark's depression initially improved with treatment, but worsened in 2007 when her mother died. (*Id.*). Ms. Stark's performance at work deteriorated due to the effects of her depression, but her performance improved once she began taking fluoxetine. (*Id.*). Ms. Stark

experienced two other severe depressive episodes in 2009 and in 2010, which resulted in a lack of energy, inability to concentrate, memory lapses, and other somatic complaints. (Tr. 47). Dr. Farrell related that despite psychotherapy, changes in medications, and numerous consultations with mental health providers, Ms. Stark has been unable to work since 2010. (*Id.*).

Dr. Farrell treated Ms. Stark through 2014, when she moved to Ohio to care for her father. (*Id.*). Dr. Farrell supported her diagnosis with the results of a Beck Depression Inventory test administered on May 11, 2015, indicating Ms. Stark has severe depression. (*Id.*). Dr. Farrell indicated Ms. Stark takes Lamotrigine and Sertraline, both of which are only minimally effective at controlling her symptoms. (Tr. 47-48).

Dr. Farrell indicated Ms. Stark has been unable to work since 2010, as Ms. Stark's "depression has become too disabling" despite therapy. (Tr. 48). Dr. Farrell recounted disabling symptoms of inability to concentrate, poor short-term memory, anxiety, extreme fatigue, memory lapse, comprehension issues, slow motor response, and various psychogenic complaints. (Tr. 48-49).

**Dariush Saghafi, M.D.** On December 17, 2015, Ms. Stark received a neurological examination from Dariush Saghafi, M.D. (Tr. 280-82). Dr. Saghafi indicated Ms. Stark's medical history included depression, anxiety, irritable bowel syndrome ("IBS"), bladder incontinence/urgency, and obesity. (Tr. 280). Ms. Stark denied physical ailments or restrictions preventing her from working. (*Id.*). Ms. Stark complained of diffuse muscle aches and neck pain. (*Id.*). Ms. Stark was alert and oriented, able to respond to commands, had normal short-term memory, and had no problems with comprehension. (Tr. 281). Ms. Stark's muscle tone and bulk were normal for her age and build in both upper and lower extremities. (*Id.*). Sensation was intact

and there was no tenderness in her cervical or lumbar spine. (Tr. 282). Ms. Stark had a normal gait and was able to toe-and-heel walk during the examination. (*Id.*).

In Dr. Saghafi's opinion, Ms. Stark suffers primarily from psychological or psychiatric disorders. (*Id.*). Dr. Saghafi indicated Ms. Stark may suffer from fibromyalgia or chronic fatigue syndrome due to her complaints, but those conditions would not inhibit or prohibit her from functioning in the workplace. (*Id.*). Dr. Saghafi indicated Ms. Stark is able to carry 15-20 pounds for a distance up to 50-60 feet, can be on her feet for 15-20 minutes before needing a break, and can bend, walk, and stand for up to 15-20 minutes at a time. (*Id.*). Dr. Saghafi stated Ms. Stark is able to understand her environment, communicate with her peers, and travel independently. (*Id.*).

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2010 through her date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: anxiety disorder, depressive disorder, dissociative identity disorder, obesity with diffuse pain, and headaches (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for the following nonexertional mental limitations. She was limited to simple tasks and simple work-related decisions in a routine work setting with changes that are easily explained. She was further limited to goal-oriented work, but no fast-paced or production quota rate work. She was limited to superficial interactions

8

with supervisors, coworkers, and the public, meaning the work does not require negotiating with, instructing, persuading, or directing the work of others.

6.　　Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.　　The claimant was born on February 28, 1960 and was 55 years old, which is defined as an individual closely approaching advanced age, on the date last insured. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.　　The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.　　Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.　　Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.　　The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2010, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 24-35).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether the Commissioner's findings are supported by substantial evidence, this Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Ms. Stark raises three issues: the ALJ failed to comply with the regulations regarding *res judicata* and failed to incorporate the limitations opined by treating and examining sources in the RFC; the ALJ erred in his credibility determination; and the ALJ erred when adopting the prior

11

RFC and did not support the current RFC with substantial evidence. (Pl.'s Br., ECF #14, PageID 699). The Commissioner opposes, asserting the ALJ correctly applied the *res judicata* standards as set forth in *Drummond* and *Earley*; and that substantial evidence supports the ALJ's credibility determination and resulting RFC. (Comm'r's Br., ECF #16, PageID 733-44). I agree with the Commissioner for the reasons provided below.

## I.      The ALJ properly applied *Drummond* and *Earley*.

Ms. Stark asserts the ALJ committed a *res judicata* error by not altering the limitations set forth in the prior ALJ's decision despite including the additional severe impairments of dissociative identity disorder, obesity with diffuse pain, and headaches. (Pl.'s Br., ECF #14, PageID 707-16). As a result, the RFC was not supported by substantial evidence. (Pl.'s Reply Br., ECF #17, PageID 746-48). Ms. Stark attempts to bolster this argument by describing her additional impairments and alleging the ALJ failed to address Ms. Stark's obesity in accordance with SSR 02-1p. (Pl.'s Br., ECF #14, PageID 709-12). She also adds in an argument against the ALJ's treatment of medical opinion evidence. (*Id.* at 712-16). The Commissioner opposes, stating the ALJ did not commit a *Drummond* error and the RFC was supported by substantial evidence. (Comm'r's Br., ECF #16, PageID 734-41). Having considered these arguments, I agree with the Commissioner.

### A.      There was no *res judicata* error and the RFC was supported by substantial evidence.

Ms. Stark asserts the ALJ improperly applied *Drummond* and *Earley*, amounting to an RFC not supported by substantial evidence. (Pl.'s Br., ECF #14, PageID 707-10). The Commissioner responds that no *Drummond* error is present and the ALJ's decision is supported by substantial evidence. (Comm'r's Br., ECF #16, PageID 734-37).

*Drummond* provides that principles of *res judicata* apply to bind the Commissioner to its prior decisions. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 843 (6th Cir. 1997). *Earley* clarifies *Drummond* by explaining that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018). Further, "[a]n administrative law judge honors principles [of *res judicata*] by considering what an earlier judge found with respect to a later application and by considering that earlier record." *Id.* at 933.

Here, the ALJ explicitly acknowledged *Drummond*, and explained he was not bound by the prior 2013 decision due to 2017 changes in the mental health listings. (Tr. 21-22) ("With this change in law exception, I am not bound by the previous Administrative Law Judge's decision pursuant to *Drummond*."). The ALJ then considered Ms. Stark's case anew based on the new listings, finding that she still was not disabled. (Tr. 23-35). In the opinion, the ALJ explained his consideration of the evidence, independent of the prior decision, but concluded that additional restrictions were not necessary. (Tr. 32-34).

I find no reversible error and decline to recommend remand on this basis.

**B.     The ALJ addressed Ms. Stark's obesity in accordance with SSR 02-1p.**

Ms. Stark next asserts the ALJ "failed to assess [her obesity] in light of the relationship between her obesity and the acknowledged relationship with diffuse pain." (Pl.'s Br., ECF #14, PageID 712). SSR 02-1p describes the evaluation of obesity: identifying the condition as a medically determinable impairment at Step Two of the sequential evaluation process, considering obesity in conjunction with Step Three findings (including its interaction with other mental and

physical impairments), and assessing its effects on the RFC assessment at Steps Four and Five. SSR 02-1p. In short, SSR 02-1p directs ALJs to consider the effects of a claimant's medically determinable obesity throughout the sequential evaluation process.

Reviewing the ALJ's decision reveals no error with respect to Ms. Stark's obesity. Rather, the ALJ found Ms. Stark's obesity was both medically determinable and severe. (Tr. 24). The ALJ then proceeded through the remainder of the sequential evaluation process and considered the effects of Ms. Stark's obesity at each step. At Step Three, the ALJ found that Ms. Stark's physical impairments, in combination with her other impairments, did not satisfy the criteria of any other listed impairment. (Tr. 25). At Steps Four and Five, the ALJ considered her obesity, but found she was still able to perform at a medium exertional level: "I find that the conservatively-treated effects of the claimant's obesity with a body mass index of 39.2 kg/m2, diffuse muscle aches and pains and headaches have restricted her to medium work[.]" (Tr. 28). The ALJ then describes these conservative treatments for pain, and Ms. Stark's reports of myalgia to Dr. Saghafi. (*Id.*). The ALJ describes Dr. Saghafi's opined limitations as consistent with medium work and finds Dr. Saghafi's opinion persuasive. (*Id.*). The ALJ concludes: "Accordingly, I find that the claimant's headaches, diffuse body pain and obesity that preexisted her date last insured restricted her to medium exertional work activities without any additional nonexertional physical limitations." (Tr. 29). At Step Five, the ALJ found Ms. Stark able to perform at a medium exertional level with additional restrictions; based on the VE's testimony consistent with these limitations, work available was in significant numbers in the national economy that Ms. Stark could perform. (Tr. 34-35).

Ms. Stark has raised no colorable error with respect to the ALJ's consideration of her obesity.

14

C.      **The ALJ properly considered the medical opinion evidence.**

Ms. Stark also asserts the ALJ did not properly consider the medical opinion evidence with respect to Ms. Stark's treating providers. (Pl.'s Br., ECF #14, PageID 713-16).

Because Ms. Stark filed her application after March 27, 2017, her case is evaluated under the regulations found in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical demands of work activities, the ability to perform mental demands of work activities, the ability to perform other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *Id.* at § 404.1520c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors"— supportability[3] and consistency.[4] *Id.* at § 404.1520c(b). An ALJ must explain how the ALJ

---

[3]      "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[4]      "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

15

considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors. *Id.*; *see also* 20 C.F.R. § 404.1520c(b)(2).),

The determination of an individual's RFC is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d). Even so, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue,* No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ may rely on the limitations contained in a medical opinion when forming the RFC, but is not required to adopt all opined limitations, even if he finds the opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 269 (6th Cir. 2015).

As a subsequent reviewer, I find the ALJ has sufficiently explained the persuasiveness of the relevant opinions in the record. The ALJ described the limitations opined by Dr. Saghafi, found that opinion persuasive, and incorporated certain limitations into the RFC. (Tr. 28). The ALJ found Dr. Farrell's opined limitations unpersuasive as inconsistent and not reflective of Ms. Stark's ability to manage her psychological symptoms, or the continued treatment she received after the relevant period. (Tr. 29-30). An ALJ is not bound by a medical opinion, is not required to find a medical opinion persuasive, and is not required to include all limitations opined by a medical source. Ms. Stark's assertions amount to a re-weighing of the evidence, which is outside the scope of permitted review by this Court.

## II.    The ALJ followed SSR 16-3p and did not err in his credibility determination.

Ms. Stark next argues the ALJ erred in his credibility determination in violation of SSR 16-3p. (Pl.'s Br., ECF #14, PageID 716-19). The Commissioner responds that substantial evidence supports the ALJ's determination (Comm'r's Br., ECF #741-44), and I agree.

16

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Then, the Commissioner evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.* At the second step, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources. *Id.*

The ALJ is not required to accept the claimant's subjective complaints, and may discount the claimant's subjective testimony when the ALJ deems it inconsistent with objective medical and other evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ need not use any "magic words," as long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity this Court is not afforded in its review. *Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of

17

the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019).

Reviewing the ALJ's decision as a whole, it is clear the ALJ considered Ms. Stark's subjective complaints, compared them against the medical record, and came to a reasoned conclusion regarding Ms. Stark's abilities. (*See* Tr. 24-35). For example, the ALJ noted Ms. Stark stopped working in 2009 due to her depression. (Tr. 25). But then the ALJ recounted subjective evidence from Ms. Stark:

> She reported that she lived alone, cooking her own meals, doing her own laundry, and driving independently in her own car. . . . She reported that she was able to manage her own personal hygiene and other needs on her own inside and outside of the home, including handling the payment of bills and cash appropriately.

(*Id.*).

Elsewhere in the opinion, the ALJ again stated Ms. Stark had alleged inability to work due to depressive symptoms, but found Ms. Stark's statements not entirely consistent with the medical evidence in the record. (Tr. 28). The ALJ included in the explanation examples such as Ms. Stark's reports to her treating physician that she was able to manage her headaches and pain and numbness in her lower back through over-the-counter medications and yoga. (*Id.*). The ALJ also compared Ms. Stark's own reports of improvement against Dr. Farrell's opined limitations to find Dr. Farrell's opinion unpersuasive. (Tr. 30).

I find no reversible error in the ALJ's treatment of the subjective opinion evidence.

## III.    The RFC is supported by substantial evidence.

Finally, Ms. Stark asserts the ALJ's failure to limit her to either sedentary or light exertional levels is reversible error. (Pl.'s Br., ECF #14, PageID 719-21). Ms. Stark couches this argument as

an error at Step Five, but centers her argument on the ALJ's RFC determination and reiterates her argument that the ALJ should have incorporated Dr. Saghafi's opined limitations. (*Id.*).

An individual's RFC determination is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d). The ALJ must explain how the ALJ found the medical opinion persuasive or not persuasive, grounded in the "most important factors" of supportability and consistency. 20 C.F.R. § 404.1520c(b). An ALJ may rely on the limitations contained in a medical opinion when forming the RFC, but is not required to adopt all opined limitations, even if a medical opinion is found persuasive. *Reeves*, 618 F. App'x at 269.

The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been considered. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020); *see also* 20 C.F.R. § 404.1545(a)(3). The ALJ also must determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* An ALJ "is only required to incorporate those limitations which he has deemed credible" and may reject limitations or impose more restrictions. *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). Doing so does not mean an RFC is not supported by substantial evidence. *Ross v. Comm'r of Soc. Sec.*, No. 14-11144, 2015 WL 1245830, at *11 (E.D. Mich. Mar. 18, 2015).

In determining whether the Commissioner's findings are supported by substantial evidence, this Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 477. This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

As provided in Section I above, I find no reversible error in the ALJ's handling of the medical opinions. The ALJ explained that he found Dr. Saghafi's opinion persuasive, but is not constrained by Dr. Saghafi's opined limitations when forming the RFC. Rather, the ALJ must explain the determination grounded in the important factors of supportability and consistency. That was done here. Therefore, the RFC determination is supported by substantial evidence and is within the Commissioner's "zone of choice."

I decline to disturb the Commissioner's decision and thus decline to recommend remand on this basis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB supported by substantial evidence and recommend the decision be **AFFIRMED.**

Dated: December 21, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).